**Joseph W. PEARSON, Plaintiff,**

**v.**

**John W. GARDNER, Secretary, Department of Health, Education and Welfare, Social Security Administration, United States of America, Defendant.**

**Civ. A. No. 2019.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

May 5, 1967.

Shaw, Jones & Shaw, Fort Smith, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, District Judge.

This action was commenced by the plaintiff, Joseph W. Pearson, by filing a claim for child's insurance benefits as provided for in 42 U.S.C.A. § 402(d). His application was denied by defendant's representatives, and the plaintiff requested and received a reconsideration. The claim was again denied, and pursuant to the timely request of the plaintiff a hearing was held by a hearing examiner in Fort Smith, Arkansas.

On June 22, 1966, the hearing examiner rendered his decision denying the plaintiff's claim. Upon review of that opinion by the Appeals Council, the claim was again denied. The plaintiff, having exhausted his administrative remedies, filed his complaint in this court on October 3, 1966, seeking a reversal of the aforementioned administrative decision. The defendant answered and filed a transcript of the evidence that was considered by the examiner. The parties have filed cross motions for summary judgment and submitted briefs in support of their respective contentions. The court has jurisdiction pursuant to 42 U.S.C.A. § 405(g).

The requirements for receiving child's insurance benefits, which are pertinent here, are set forth in 42 U.S.C.A. § 402(d) and may be paraphrased as follows. A child of an individual who dies fully insured is entitled to benefits if the child was dependent on the deceased, and if the child was under a disability as defined by 42 U.S.C.A. § 423(c), which began before the child attained the age of 18.

That the plaintiff was dependent on his father, Verna B. Pearson, and that the father died fully insured are not disputed here. The controversy between the parties is whether the plaintiff, upon

attaining the age of 18, was under a disability as defined by § 423(c) (2).

The plaintiff was born March 2, 1927. When he was in the first or second grade, it became apparent that he suffered from some form of disability because he would tire easily and did not have the energy which most boys of that age possess. He was examined by Dr. W. Kelly of Springfield, Missouri, who diagnosed his condition as heart trouble. This diagnosis has been confirmed several times since, and it is clear that the plaintiff's heart condition persisted until he was 18 and still persists today. As a child the plaintiff was plagued with various other ailments, including asthma, malaria and possibly rheumatic fever. Any sort of strenuous activity resulted in dyspnea, and damp or dusty weather aggravated his asthma. The plaintiff was twice rejected by the Selective Service System as being physically unfit for service. At neither time did the examining board state specifically upon what grounds the conclusion was based. Several of the ailments mentioned above were discussed, but were designated as "not considered disqualifying." The board evidently concluded that the general state of the plaintiff's health would not permit his engaging in the physical activities necessarily associated with military service. According to the latest medical reports the plaintiff now suffers from asthma, an ulcer, and a valvular (pulmonic and mitral) heart disease, classified as II–B. The asthma and heart condition have been with him since before March 25, 1945, when he became 18 years old.

Most of the discussion presented by both parties is directed to the correctness of the hearing examiner's decision insofar as that decision held that the plaintiff was not, upon attaining the age of eighteen, under a medically determinable disability as defined by the Act. The plaintiff, urging reversal of that decision, contends that the determination of "no disability" is not supported by substantial evidence, and is therefore erroneous. The defendant Secretary contends that the determination is correct and should be affirmed. Both parties cite and refer to much of the medical and lay testimony contained in the transcript in support of their respective contentions. The parties also have devoted considerable discussion to the effect of an earlier decision of a hearing examiner concerning this claimant.

The defendant contends that the decision of the hearing examiner (then Referee) dated February 20, 1958, denying the claim of the plaintiff, is res judicata and conclusive of the claim of the plaintiff as asserted herein. The plaintiff contends that the decision of the hearing examiner of February 20, 1958, does not bar the claim of the plaintiff in the instant case.

In the event the court holds that the decision of February 20, 1958, is a bar to the claim asserted herein, then it will not be necessary to further discuss the contention of the plaintiff that the finding of the hearing examiner of June 22, 1966, is not supported by substantial evidence.

On October 10, 1956, the plaintiff filed a claim for child's insurance benefits which resulted in a hearing examiner's (then Referee) decision dated February 20, 1958, denying the claim (TR 76). On April 16, 1958, counsel for plaintiff at that time filed a "Rebuttal to Referee's Decision," which set forth various reasons why, in his opinion, the Referee's decision was in error (TR 84). On September 29, 1958, notice was sent to the plaintiff advising him that the Appeals Council was "of the opinion that a formal review of the Referee's decision would result in no advantage to the claimant," and that the request for review had been denied (TR 88). On the same day, Joseph E. McElvain, Chairman of the Council, wrote the plaintiff that the request for review had been denied, and explained further:

"If you desire a review of the referee's decision by a court, you may commence a civil action in the district court of the United States in the judicial district in which you reside with-

in sixty days from this date. For your information as to the action of the district court, your attention is directed to section 205(g) of the Social Security Act, as amended, (section 405 (g), Title 42, United States Code). If such action is commenced, the individual who is Secretary of Health, Education, and Welfare, at that time, is the proper defendant."

No further action was taken by the plaintiff until he filed his claim of November 13, 1964, which forms the basis of the appeal now before the court.

It is the opinion of the court that the failure on the part of the plaintiff to seek judicial review of the 1958 decision operates as an absolute bar to the plaintiff's present claim and precludes the court from determining the controversy on the merits of the claim of disability.

Section 205(g) of the Social Security Act [42 U.S.C.A. § 405(g)] sets forth the procedure to be followed in obtaining review of a decision of the Secretary and is controlling in the instant situation. The section reads as follows:

"(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia."

A leading case interpreting this section is Hobby v. Hodges, (10 Cir. 1954), 215 F.2d 754. The substantive issues involved in that cause were not the same as we have here, but the procedural question—the effect of the failure of a claimant to seek judicial review of a Secretary's decision—is in point.

In that case, Hodges, the plaintiff, filed his application for insurance benefits in 1940. The Board determined that he was entitled to some benefits, but because the Board failed to consider as wages certain income which the plaintiff had received and which the plaintiff thought should be considered as wages, the benefits awarded were less than the plaintiff thought were due him. In 1946 Hodges filed a second application, which resulted in a ruling similar to that issued on the 1940 application. Hodges took no further action on the matter until 1953 when he filed a request for a hearing, claiming the 1946 determination to be erroneous. In reversing the District Court and ordering the complaint dismissed, the Court of Appeals at page 759 stated:

"The courts have not established a clear rule as to when the findings and decision of an administrative body are res judicata in subsequent proceedings. 42 Am.Jur., Public Administrative Law, Secs. 155, 161. It appears to us, however, that in this case the answer is found in the Social Security Act itself. When a claimant makes an application, the Act provides a detailed and comprehensive procedure for determining the benefits due. It was the evident purpose of Congress that this determination was to be the function of the Secretary and not the courts. As we have heretofore pointed out, a dissatisfied applicant may obtain a hearing which is in the nature of a judicial proceeding requiring the taking of evidence, findings of fact and a decision. After a final decision following a hearing, any individual who was a party to that hearing may obtain a review of such decision by civil action brought in the proper United States District Court, but that action may be brought only within sixty days after the mailing to the party of the notice of such decision. Upon review, the court has the power to affirm, modify, or reverse the decision. The findings

of the Board as to any fact, if supported by substantial evidence, are conclusive upon the court and are not otherwise subject to review. The findings and decision therefore may become final *either by lapse of time or court approval.* Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 54, 68 S.Ct. 822, 92 L.Ed. 1196. *To permit the applicant to relitigate a claim after failure to obtain a court review within the statutory time would run counter to the apparent purposes and provisions of the Act.* Thompson v. Social Security Board, 81 U.S.App. D.C. 27, 154 F.2d 204; United States v. LaLone, 9 Cir., 152 F.2d 43; Social Security Board v. Warren, 8 Cir., 142 F.2d 974; Walker v. Altmeyer, 2 Cir., 137 F.2d 531; Cf. South v. Railroad Retirement Board, 5 Cir., 131 F.2d 748; United States v. Willard Tablet Co., 7 Cir., 141 F.2d 141 [152 A.L.R. 1194]. If the applicant in this case is permitted to have his claim relitigated, as he has sought to do, there would be no end to the controversy, and the provision in the statute which requires an action to be brought within sixty days after notice of a decision would become meaningless." (Emphasis added.)

Another case in which the res judicata issue is discussed, and which is highly pertinent here, is Phillip v. Ribicoff, (E.D.Pa.1962), 211 F.Supp. 510. In that case the plaintiff filed a claim for benefits which was denied by the hearing examiner in a decision dated April 7, 1960. On September 6, 1960, the Appeals Council denied her request for review and mailed to her a letter, very similar to the one sent to Pearson in the instant case, which explained the procedure she must then follow, and stated that she had sixty days in which to institute action in the appropriate District Court. The plaintiff did not do this, but instead waited until December 2, 1960, and filed a second application. This application resulted in a hearing examiner's decision dated September 8, 1961, which denied her claim stating that because she failed to

seek review of the 1960 decision, the finding therein became final and binding. On November 8, 1961, the Appeals Council refused to review the case. The plaintiff then instituted an action in the District Court for the Eastern District of Pennsylvania, seeking review of the Secretary's decision denying her *second* application. The court affirmed the hearing examiner's decision, and stated at page 512:

"In the first instance, a failure to commence an action within the sixty-day period from the final decision of the Secretary will bar the action."

Stating further at page 513:

"The issue as we see it, harsh though it may be, is whether or not under the terms of this Act, when the original hearing examiner denied the application, and the Secretary denied the request for review, an appeal should have been taken to this Court within sixty days from that date as clearly expressed to the plaintiff at that time, or whether having failed to do so plaintiff could at a later date reapply on the same facts, thus avoiding the definite limitation provisions of the Act. No case of precisely the same facts has been presented to us, but we are of the opinion that the sixty-day period of limitation ran from the original decision and it could not be thwarted by a later application unless the second application was based on facts dissimilar from those contained in the original application or which might conceivably consist of a different work period having evolved since the original application."

The case was affirmed (3 Cir., 319 F.2d 530) with a per curiam decision, which reads as follows:

"On review of the record we find no error. The Order of the District Court dated December 13, 1962 will be affirmed for the reason so well stated by Judge Wood in his Opinion. To the same effect see Hobby v. Hodges, 215 F.2d 754 (10 Cir. 1954)."

A very concise opinion, turning on the same point, is Rivers v. Celebrezze, (W.D. Va.1963), 217 F.Supp. 141. At page 142 the court said:

"There is considerable evidence in the file to the effect that the plaintiff was in fact disabled prior to June 30, 1957. Unfortunately that evidence cannot be considered on this appeal.

"This is for the reason that, prior to filing the current application on August 16, 1960, applicant had filed a previous application on November 25, 1958. This first application was denied on April 8, 1959 and applicant took no further steps requesting a reconsideration or a hearing before a Referee. The failure to carry the matter further resulted in the decision denying disability as of November 25, 1958 becoming res adjudicata as to the fact of non-disability on the last date on which the applicant was covered by the Act. Kindig v. Ribicoff, D.C., 202 F.Supp. 198, Boles v. Celebrezze, D.C., 210 F.Supp. 856, Hobby v. Hodges, 10 Cir., 215 F.2d 754, and 50 C.J.S. Judgments § 690, p. 148.

"As that proceeding determined that the plaintiff was not disabled within the meaning of the Act as late as November 25, 1958 and as we have seen that to be entitled to benefits under the Act he must, in view of the coverage requirements, have been disabled not later than June 30, 1957, it follows that his current application must be denied on the ground that the question is res adjudicata and the very considerable evidence in the record to the effect that the plaintiff has become disabled in recent years cannot be considered."

See, also, Myers v. Gardner, (9 Cir. 1966), 361 F.2d 343, which cites Rivers with approval.

 It is the opinion of the court that the principles discussed and the conclusion reached in the above mentioned cases are sound and should be followed here. The rule which those cases developed, however, should not be applied indiscriminately. It places a definite restriction on recovery under the Act and, because the Act is remedial, it should be liberally construed as a whole, and any rule which would limit the coverage of the Act should itself be strictly construed. The doctrine of res judicata is limited to facts and conditions as they existed at the time of the first decision, and does not apply when new facts have developed or come to light since the original decision. Johnson v. Flemming, (10 Cir. 1959), 264 F.2d 322.

The transcript of the evidence upon which the 1958 decision was based is not now before the court, but the opinion itself sets out rather extensive findings of facts. At page 4 of the Referee's decision (TR 79), the examiner (then Referee) stated:

"However, the heart classification in 1951 was Class II B and there is no medical evidence from which it can be said a more severe condition exists even at this time. While this heart classification is indicative of fatigue and dyspnea on some physical activity, the limitation is slight and while restricting strenuous activity permits ordinary activity without restriction. The medical report by the Vocational Rehabilitation Service indicates limitation on such activity as walking, standing, stooping, kneeling, pushing, and lifting, and states reaching should be avoided, however, the conclusion reached generally was that the claimant could do usual exercise but that hurrying and prolonged exercise caused dyspnea. The medical evidence indicates that claimant does not have a heart impairment of such severe nature as to have continuously rendered him unable to engage in any substantial gainful activity. It also appears that claimant has had asthma for several years. In the 1951 medical report it was characterized as mild and there is no clinical evidence substantiating a finding of such a severe condition in this respect either from the medical evidence and otherwise as to constitute a disability sufficient to have prevent-

ed the claimant from any substantial gainful activity. While the heart condition and the asthma would contribute to symptoms of shortness of breath and general fatigue, the evidence as a whole does not indicate that these impairments would, singly or in combination, constitute disabilities of such severe nature as to qualify the claimant under his application for a period of disability."

The examiner then concluded that the plaintiff, when he attained the age of 18, did not suffer from any medically determinable physical or mental impairment which would have been expected to result in death or to be of long-continued and indefinite duration.

■ Since that decision there could have been no change in the facts determining the plaintiff's eligibility because all relevant facts became static on his 18th birthday. However, had there been new evidence which disclosed facts not brought out in the earlier case, such evidence would have been relevant and competent. But, when considered together, the 1958 decision, the 1966 decision, and the exhibits and the testimony of the 1966 hearing, show conclusively that there have been no significantly new evidentiary developments since the 1958 hearing. The decision of 1958 and the decision appealed from reached identical conclusions with respect to the plaintiff's state of health *at 18 years of age*, and both opinions were based on substantially the same evidence.

The only change possibly relevant here which has taken place since the plaintiff's first claim was denied is found in the wording of 42 U.S.C.A. § 423(c), which defines "disability." The statute in force on October 10, 1956, reads as follows:

"(2) The term 'disability' means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be

under a disability unless he furnishes such proof of the existence thereof as may be required."

The statute as amended in 1965 reads as follows:

"(2) The term 'disability' means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or"

■ It is readily apparent that the only change which could affect the plaintiff's claim is that the length of the disability period requirement has been changed from "long continued and indefinite duration" to "a continuous period of not less than 12 months." The amendment was not intended to change the substance of the disability requirements, but rather was intended to make the term more definite for the purpose of disability period payments. See 1965 U.S.Code Cong. & Adm.News, Vol. 1, pp. 1995 and 2249. Why the change was made, however, is not really important here, because the first hearing examiner found the plaintiff was under no disability when he became 18 years old, the crucial time in question. At page 4 of his decision (TR 79), the examiner stated:

"It is the finding of the referee that the claimant has not had impairments of such severe nature as to prevent him from engaging in any substantial gainful activity from a time beginning before he reached eighteen and continuing until the filing of the application, and he is not therefore entitled to have a period of disability established for him under his application."

No new facts could have developed after that decision; no new evidence has been presented; and there has been no change in the statute relevant to the claim now before the court.

■ Since no judicial review of the decision of February 20, 1958, was sought and the time for filing a petition

for review has elapsed, the decision has become final. The motion of defendant for summary judgment should be sustained and the complaint of plaintiff dismissed.

An order is being entered granting the defendant's motion for summary judgment, denying plaintiff's motion for summary judgment, and dismissing the plaintiff's complaint.